McCormack-Reedy Lumber Company v. Savage.

Opinion delivered July 6, 1925.

1.  MASTER AND SERVANT—DUTY TO DISCOVER DEFECT—JURY QUESTION. —In an action by a mill employee for injuries received by reason of a defective throttle valve which caused the engine to start while he was moving it, the question whether it was plaintiff's duty to inspect the engine to discover the alleged defect in the throttle valve was for the jury where the evidence on this point was conflicting, and an instruction taking such issue from the jury was erroneous.

2.  MASTER AND SERVANT—CONTRIBUTORY NEGLIGENCE—INSTRUCTION. —Where there was a conflict in the evidence as to whether plaintiff pursued an unsafe method in attempting to move a stationary engine off the center, and as to whether in doing the work he disobeyed the master's instructions, it was error to refuse to give an instruction which properly submitted the issue to the jury.

3.  EVIDENCE—ADMISSION AGAINST INTEREST.—In an action by a mill employee for injuries received when a stationary engine which he was moving suddenly started by reason of a defective throttle valve, testimony as to a conversation between plaintiff and one of

his employers in which the latter stated that the throttle valve was cracked and was the cause of the trouble was admissible as in the nature of an admission against interest.

Appeal from Hot Springs Circuit Court; *Thomas E. Toler,* Judge; reversed.

*Brouse & McDaniel,* for appellant.

*H. B. Means* and *D. M. Halbert,* for appellee.

Wood, J. The appellee instituted this action against the appellant. The appellee alleged that the appellant, McCormack-Reedy Lumber Company, was a partnership composed of John McCormack and J. J. Reedy, and engaged in the business of operating a sawmill: that he was in their employ firing the boiler, operating a stationary engine in appellant's mill; that, while running the engine under the direction of appellants and with due care for his own safety, he was attempting to move the engine off center when the same suddenly started while the throttle valve was fully closed, and caught appellee between the belt and fly wheel, and severely injured him; that the injury was caused by the negligence of the appellants in permitting the throttle valve on the engine to become worn, warped and cracked so that it permitted steam to pass into the cylinders while the valve was fully closed, and that because of such unsafe defective condition the engine started while appellee was attempting to move same off center. thereby catching the appellee between the belt and fly wheel and severely injuring him. The appellee prayed for judgment in the sum of $5,000.

The appellant answered and denied all the allegations of negligence on its part, and set up the affirmative defenses of contributory negligence and assumed risk on the part of the appellee.

The appellee testified in his own behalf that he was in the employ of the appellant at the time of his injury; that on the 25th of February, 1922, he received the injury while he was in charge of the engine that was running appellant's mill. Appellee had

received notice from the filer that he wanted to file
and appellee blew one whistle because he was going
to shut down. The engine was barely running, so the
sawyer could throw his belt on, but when he threw his
belt on the engine stopped on center. The appellee then
threw the throttle off and went through the fly wheel
between the hickory saw and edger and pulled on the
drive wheel and the wheel picked up at once and carried
appellee over and caused the injuries of which he com-
plains. Appellee explained in the presence of the jury
the manner of his operation of the throttle and the man-
ner in which his injury was caused. He stated that was
the way they directed the work done. It was the way all
of them had ever done. Of course, the appellant had
instructed appellee to be careful. There was no way to
get a fly wheel off center but to jump over the engine or
climb over the bracing. But it wasn't necessary to go
way around that way, and appellee was doing it the way
all of them had done, and the way the appellants had
directed them to do it. Appellee stated that at the time
of his injury his work consisted in "firing and tending
the engine—firing, oiling and starting and stopping
and keeping up steam." On cross-examination he stated
that he had been working around engines all his life, but
had never assisted on throttles or anything like that.
He started and stopped them and ran them. Over the
objection of appellants, appellee was permitted to testify
that he went over to the mill something like twenty days
after he was hurt when they were moving the throttle
and had a conversation at that time with McCormack
about the condition of the throttle at the time of appel-
lee's injury. McCormack showed the throttle to appel-
lee. The valve was cracked. Appellee then explained
to the jury by pointing out on the valve what he meant
by saying that the throttle valve was cracked and how
that caused the fly wheel to start up. Appellee further
stated: "Mr. McCormack says, 'Will, here is the trouble;
the throttle valve is cracked,' and I says, 'Yes sir,' and

he says, 'this is the trouble—that's the cause of this leaking steam.' " Witness further explained to the jury the manner in which the defective valve caused the fly wheel to start and injure the witness.

There was testimony on behalf of the appellee by an expert locomotive engineer, who had had experience in operating stationary engines and also was familiar with the manufacture of such engines, to the effect that if the throttle valve is ground right you can turn it any place and it won't move because the pressure is shut off between the engine and the valve. If the engine stops on center, and the throttle valve is leaking, when you pull it off center, it will turn the engine over to the next center. If it leaks very bad, it will turn it over a time or two.

The testimony on behalf of the appellant was to the effect that the proper way to pull the engine off center would be to go around and pull the fly wheel down; that there was no danger in doing it that way; that there was nothing to prevent the appellee from pulling the fly-wheel off of center in the proper way, in which he would have been perfectly safe. Appellants had warned the appellee not to start the engine in the unsafe way. Before the appellee was injured appellants had seen the appellee starting the engine by the dangerous method and had warned him of the danger and told him not to do that. One of the witnesses for the appellants stated that he had been a boiler maker and engineer for twenty-five years; that he had never seen the valve in contro-versy until a day or two before he gave his testimony. He exhibited the throttle before the jury and stated that it had been cracked, but the crack did not go through. It doesn't show any crack. It shows that it seats properly. If it didn't, there would be spots there showing that it didn't touch. The turning of the drive belt and saw would indicate that the valve seated properly· There was further testimony on behalf of the appellant to the effect that a man who had had experience with an engine would

know if the valve was leaking. There was no leak in this valve whatever. The testimony for the appellants further tended to show that the throttle valve was not closed by the appellee, but was left partially open by him.

McCormack, one of the appellants, testified and exhibited the throttle and stated that it was seating properly at the time, and if it wasn't it was appellee's fault; that, if the throttle was leaking, appellee's duty was to report it, and fix it, or have it fixed. He worked on the engine nearly every day. The throttle might be broken at any time. It could have got out of fix before appellee went in there. The throttle at the time of the injury was not cut off. The valve was taken out some little time after appellee was hurt, and appellee came there while the valve was being taken out. Witness denied that he ever showed the valve to appellee after his injury, and there was never any occasion to say to the appellee that the valve was cracked.

Appellant J. J. Reedy testified among other things that when he hired an engineer it was the engineer's duty to keep up the engine, and that if there was anything wrong he should report it. He stated that he never gave the appellee instructions to start the engine the way he did, but on the contrary told him not to start it that way. Witness had seen the appellee start the engine before, and told him it would be only a matter of time when it would get him if he started it by getting straddle of the belt. The proper way for an engineer to do, when his engine is on center, is to stay away from under his belt or get on the side where the belt can't catch him.

A witness for the appellee in rebuttal testified that he was a practical engineer, and he was working for the appellants when the appellee got hurt and helped to take the throttle valve out and carry it to Malvern to be fixed something like a month after the injury. The valve leaked a little.

The appellant prayed the court to instruct the jury to return a verdict in its favor. In its instruction No.

5, given at the instance of the appellee, the court told the jury that, "if the plaintiff was injured on account of the defective condition of the throttle valve in permitting steam to accumulate in the cylinder and causing the fly-wheel to jump and catch the plaintiff as alleged in his complaint, if you find that he was injured, it will be your duty to find for the plaintiff."

Appellant's prayer for instruction No. 6 was as follows: "You are instructed that if you find from the evidence that the plaintiff knew of the methods that were used by the defendant in starting the said engine at which the plaintiff was at work, and that he knew and was aware of the conditions furnished him in which to do the work and the manner in which it was done, he assumed the risk and dangers which might result from such known methods and defects, if any. Therefore, if you find from the evidence that the plaintiff by reason of observation, experience or instruction knew of the conditions and dangers incident thereto in the performance of his duties, and if you further find from the evidence that the plaintiff had been told by the defendant not to undertake to start the same in the manner that he did, he cannot be heard to complain in this suit that the defendant had failed to furnish him a safe place in which to work."

The court modified this instruction by making the first part thereof read as follows: "You are instructed that if you find from the evidence that the plaintiff knew of the defects of the throttle or valve, if any and knew of the methods, etc.," the remainder of the instruction being the same as appellant's prayer, and gave the instruction as modified, to which ruling the appellant duly excepted.

Appellant's prayers for instructions Nos. 12 and 13 were to the effect that if the appellee knew or by the exercise of ordinary care could have known that the engine was defective, if the same was defective, then he could not recover.

The jury returned a verdict in favor of the appellee in the sum of $750. Judgment was entered in his favor for that sum, from which is this appeal.

1.   The appellant contends that under the undisputed evidence the appellee should have exercised ordinary care to discover the defect, if any, in the throttle, and that, if a defect existed in the throttle as alleged in the complaint, it could have been discovered by the exercise of ordinary care on the part of the appellee, and therefore, if the alleged defect in the throttle was the proximate cause of appellee's injury, the appellant was not liable therefor.   Appellant's prayers for instructions Nos. 12 and 13 and the requested modification of appellee's prayer for instruction No. 5 were predicated upon the theory that it was the duty of the appellee to exercise ordinary care to discover the defect in the throttle which he alleged caused his injury.   We are convinced that it was an issue for the jury under the evidence as to whether or not it was the duty of the appellee to exercise ordinary care to inspect the engine to discover the alleged defect therein.   The testimony of McCormack to the effect that it was appellee's duty "to fire and keep up the engine, and, if the throttle was leaking, it was his business to report it and fix it or have it fixed," tended to show that it was the duty of the appellee to exercise ordinary care to inspect the throttle for structural defects therein.   But, on the other hand, the testimony of the appellee was to the effect that he was "firing and tending the engine, firing, oiling, starting up and stopping and keeping up steam."   Further along in his testimony he stated: "I knew the trouble was a leak some way, but that was out of my bound; when it came down to the throttle, that was not my business."

There was testimony tending to prove that the alleged defect in the throttle was a crack, the nature of which could only be discovered by an inspection thereof, and that it was such a defect that one simply charged with the duty of firing, tending the engine, oiling, start-

ing and stopping and keeping up steam, would not discover in the exercise of ordinary care in the discharge of these duties.

The court therefore ruled correctly in refusing to declare as a matter of law that it was the duty of the appellee to exercise ordinary care to discover the alleged defect in the throttle and to declare under the undisputed evidence as a matter of law that he could have discovered such defect if he had exercised ordinary care to discover the same. The instructions should have been so framed as to submit this issue to the jury. The court, instead, took such issue from the jury by telling them, in the language of instruction No. 5 quoted above, that if they found from the evidence that the plaintiff was injured on account of the defective condition of the throttle valve, they should find in his favor. The court erred in giving this part of instruction No. 5. The contentions of both appellee and appellant were erroneous on this issue. The court should have instructed the jury in effect that if they find under the evidence that it was the duty of the appellee to exercise ordinary care to discover the alleged defect in the throttle and he failed to exercise such care, and that such failure was the proximate cause of his injury, then their verdict should be in favor of the appellant; but, on the other hand, if the jury find that it was not the duty of the appellee to exercise ordinary care to discover the alleged defect in the throttle, and if through the negligence of the appellant such defect existed, and was not an open and obvious one, and they further find that the same was not the proximate cause of the injury to the appellee, then their verdict should be in his favor.

2. The appellant also contends that the undisputed evidence shows that the proximate cause of appellee's injury was the unsafe method he adopted in moving the engine off center contrary to appellant's warning and instruction. We cannot concur in the view of learned counsel in the contention that, under the undisputed evi-

dence, the appellee was pursuing an unsafe method contrary to the instructions of the appellant. It was likewise an issue for the jury under the evidence to determine whether the method appellee was pursuing was unsafe and contrary to the instructions of appellant. The testimony of witnesses for the appellant tended to show that such was the case, but the testimony of the appellee tended to prove that such was not the case, and that he was pursuing the method which appellant had directed—the way that all of them had done before. The issue should have been submitted to the jury by granting appellant's prayer for instruction No. 6 without modification. That instruction would have correctly submitted the issue. The modification added by the court was erroneous because if the appellee at the time of his injury was pursuing a method of moving the engine off center contrary to the directions of the appellant, the appellant would not be liable for appellee's injury resulting from his disobedience to the orders of his master, whether appellee knew of the defects in the throttle or not. The court erred in modifying the appellant's prayers for instruction No. 6 and in not giving the same without modification.

3. Under the circumstances there was no error in the ruling of the court in admitting the testimony of the appellee as to the conversation he had with appellant McCormack about twenty days after the injury occurred concerning the defect in the valve. What appellant McCormack said and did under the circumstances as developed here was in the nature of an admission against the appellant, and therefore relevant and competent evidence to be considered by the jury. Appellant exhibited the throttle to the jury and testified concerning it. See *Stecher Cooperage Co.* v. *Stedman,* 78 Ark. 381.

4 There was evidence to sustain the verdict and the rulings of the court in the giving and refusing of prayers for instructions, except in the particulars above mentioned, were correct. Except as above indicated, the

instructions on the question of negligence, contributory negligence and assumed risks were in conformity with the law as announced in numerous decisions of this court. The law on these subjects is so familiar that we deem it unnecessary to further comment upon them or to cite the cases.

For the error in giving appellee's prayer for instruction No. 5 and in refusing appellant's prayer for instruction No. 6 and in modifying same and giving it as modified, the judgment is reversed and the cause remanded for a new trial.